The first case for argument is 16-2666, Smart Modular Technologies v. Netlist. Mr. Heafy, please begin. The fundamental error by the Board in the re-examination of the Netlist patents brought by Petitioner Smart Modular was the insistence on the incorporation and the use of the claimed construction from the inter-partners reviews brought by Petitioner Sandisk. That construction was based upon a different record. On page 35 of the red brief, Netlist contends that Smart purposefully rewrites the key environment phrase to pre-defined values instead of as from pre-defined values 25 times in the briefs in an effort to argue that the alleged address and control signals are generated from values that must be pre-existing. How do you respond to that? There is no foundation to that. That is just the way the words were phrased. There is no determination to use to or from in any way. It has no meaning? To and from have no meaning in the patent? They have a meaning in that the pre-defined values stored within the controller are data. The claims require the generation of signals. So the data may be stored within the controller and from that data or from what is in that storage, the signal is generated. But the data is not a signal. The controller is a box. At some point in operation, there is no signal. Well, let me ask you another question. On page 44 of the red brief, Netlist contends that Smart has waived its right to present as new and it says, I'm quoting, new and inconsistent proposed claim construction that produce encompasses mere selection of a signal that has already been externally created and later stored and thereafter issued without transformation or modification. I've looked at this closely and I want you to tell me why we should not consider this argument waived. And in doing that, show me in the record where you raised this claim construction argument in front of the P tab. Smart previously raised its proposed construction of generate signals at appendix 686, appendix 142 to 143. Slow down. Yes. Well, it's six, eight, six. Where are you, please? Appendix 686. I went through all this and I consider it a very strong argument. Excuse me? I said I went through all this and I consider it a strong argument, but I want you to tell me why it isn't. What we have in bold in the quote, or they may be defaulted to predefined values, we may explain the predefined values are stored in memory at manufacturer prior to operation and control module generates output signals from these values during testing. That's precisely the argument. We also have appendix 142 to 143. I'm looking at it. Go ahead. At the bottom, we've configured to provide memory signals, data address, and control signals. 434 pattern 6, column 6, lines 3 to 5. Again, the data patterns will be programmable based on information received by the generation. That's a slightly different argument. We again have appendix 592. So we can forget about appendix 142 and 143? No. 142, we have first configured to provide memory signals, data address and control signals. 143, we have the quote, the address sequences and or the data patterns of certain embodiments may be programmable either through the I2C interface or they may be defaulted to predefined values. Same argument. Same quote. That is the language from the specification on which we have relied. We also have appendix 592. I'm sorry, 592. I'm looking at it. Where? Middle of the page. What is the stock in that? I'm afraid I have the version that is the extracted. So reply brief in support of petitioner's motion to exclude. Petitioner Pellant raised his argument concerning the prior art Aberberge at appendix 3466. This is the request for rehearing. And it is the majority of that page. And the signal data distinction, appendix 3464. 3464. This is in particular in connection with Judge Clement's dissent. And page appendix 3465. You can see the first full paragraph there. And then it continues with the discussion of Aberberge anticipating under the reasonable interpretation of Generate. Waiver is a doctrine of limited application. It cannot be invoked to limit a party from clarifying or expanding upon explaining its theories. That theories have been raised, they are not waived, and they may be argued and explained further. And a request for rehearing? I mean, the last pages you cited were your request for rehearing. Yes. You can't use that as an opportunity to make new arguments. You can make that as an opportunity to show that the arguments have been raised below, in that it had been raised, there's a basis, and they're being explained in the rehearing. And those arguments were not rejected or denied or excluded in the rehearing. So when they had support in the original briefing, the original arguments, when they are raised in the rehearing, they are raised below. So tell us a little about the argument, the merits of the argument you're making. The merits of the argument on claim construction or on the waiver? On claim construction. On claim construction. The problem is that the board insisted on using the interpretation from the Sandisk review. And Sandisk had a different record. Although it had the same prior art, it had a different view of the prior art. So what precisely is the claim construction we're talking about? Generating meaning cause rather than just produce? I don't like using single words. Generating must include creating a signal from internal to the circuit. Now that signal... Can you say that again? What's baffled me about your argument in this entire case is that you dispute the board's construction of generate, but I find no clear construction you provided to us beyond saying you should come up with something that includes this disputed embodiment. There are actually three possible embodiments. One... Can you just give me what you think the claim construction is and show me where you've argued that to us clearly? Yes. The claim construction should be the generate is creating a signal for transmission, not data, but a signal either by an algorithm which generates the data on the fly from which the signal is generated and transmitted, or where it is read from values that are recorded in a memory and the signal is then generated and transmitted from the controller. And I hesitate to say this, but where did you argue that below in the record? Are you just going to refer me to the same pages that you gave me before? Those are the pages which I have prepared to argue on. Where in your brief is that description of generate? In our brief here in this court? Yes, in those words that you just described to us. We explained in the brief that there are three possible embodiments. I don't want to talk about the embodiments. This is the problem. You tell us we have to come up with the construction to cover these embodiments. It's your job to tell us what construction you want. You just told us one, but I don't remember reading that in the briefs. Where is it? Start with the blue brief rather than the white brief. We stated that a proper interpretation would include signals. What page are you on? Page 29. Correct interpretation includes the disclosed embodiments. And there are two disclosed embodiments. But you didn't put in your blue brief the construction you just described to me. In our original petition, we did put in the construction. The construction was based upon the intrinsic evidence of the specification that generate is caused, produced, don't want to base it on a single word, from data, from an algorithm, or from predefined values, which are stored. Now, the board did not include the intrinsic evidence of the predefined values. And what was raised to the board, the board only addressed this intrinsic evidence by looking at the expert, petitioner's expert, and then rejecting that as extrinsic evidence. But that had it backwards. That was failing to look at the intrinsic evidence by rejecting extrinsic evidence. The board at no point addressed the predefined values as a disclosed embodiment that should be included within the claim construction. This resulted in a failure to actually appreciate the prior art. Now, Judge Clements, in his dissent, got this exactly right. When on rehearing, the petition for rehearing, the board said that it had included that embodiment. It added an additional limitation, a limitation that was not in the specification. That if a device outside the controller had ever stored those values in the controller, then that was not within the scope of the claim. And Judge Clements read that at some point in manufacture, it's possible to store it there. And so, therefore, the proper interpretation was that generate signals could come from an algorithm generating or from the predefined values. And all interpretations exclude the transceiver situation, where the signal simply passes through and the signal is not originated or created within the controller. You're willing to rebuttal, so why don't we hear from the other side? I don't see anything. Good morning, Your Honor. May it please the court. I'm going to ask you about waiver, but before I do, help me out with this, okay? I assume you have something to do with the next case? Yes, I do. So if we were to affirm the companion case before our court today, what effect would that decision have on this appeal, if any? I don't think it has any effect as I stand here, Your Honor. Because there are some overlaps and some non-overlaps? Yes, that's correct. Well, with regard to the overlapping claims, it surely does. Yes. If we affirm the invalidity of those claims in Sandus, you can't assert those claims in any court. Correct, Your Honor. You're going to get smart, I assume. Correct, Your Honor. This proceeding, no claims were held invalid, unpatentable. And in the other proceeding with Sandus, there were claims that were held unpatentable.  I'm sorry? And there's an overlap between those claims? Yes, there is, Your Honor. In other words, there were claims that were held patentable in this case that went down? Yes, that's correct. And that should be clear. So the answer to Judge Wallach's question is if we affirm the second case, those claims obviously go down. Oh, yes, yes. And forgive me, but that is true. You're talking about result as opposed to? I was talking about, yeah, the application of the different arguments and does one carry over. But certainly the results can carry over from one case to the other. Is there anything particular about the non-overlapping claims here that distinguished them from the theory used for invalidity in Sandus, or were they just not asserted in the Sandus petition? I think that there's nothing that particularly comes to mind with respect to the asserted claims being different. I think you have different arguments with the same prior art. So it's not that the claims, the non-overlapping claims here, have some other feature or other limitation that you need to get at to invalidate them. It's just that they weren't asserted in the Sandus case. It's that there are overlapping claims, and to the extent the claims overlap and are held unpatentable in the Sandus case, that would obviously trump what happens with the case. Let me be clear. I'm sorry. This is all a little fuzzy, and there's way too many overlapping claims and theories of waiver and stuff like that. At least by my count, there's four or five claims here that don't overlap with the invalidity in Sandus. If we applied the Sandus theory of invalidity to those claims, would they be invalid if we affirmed that invalidity theory? Absent the waiver issues, I think one could argue that those invalid positions would carry over, but they weren't raised here. Because it depends on the definition of generate and all that kind of stuff, and where in the prior art Sandus relies on defined generate. Right, and they allege different theories in the other case than this case, so there's a little bit of a conflict in that respect. Yeah, a little bit. And it is a little bit complicated, but, Your Honor, if you'd like me to start with waiver, I have three points I'd like to make. Talk about your friend's references to the record, which I have to tell you didn't help me much. Yeah, I'm a little bit at a loss, and I was trying to follow along, but the primary point, and you can start with Appendix 142, which counsel noted, the construction there is to cause or initiate transmission and causing or initiating. So the entire case for SMART was premised on a construction of generate as meaning cause or cause to initiate. That's what they based their case on, and looking at these sites, including what counsel just pointed out, doesn't change that. And so they specifically came to the board, and they said that in the petition, this language with respect to defaulted to predefined values supported the construction of generate as cause. And we just saw that. We just saw that right in Appendix 142. And they doubled down on that because on the reply, they argued that a construction of generate as produce cannot account for predefined values that already exist and are not generated. In other words, this language they're pointing to now as support for their position on produce was 180 degrees different from what they took before the board. And on appeal here, they argue that they're entitled to clarify or defend the original claim construction. But this is not the original claim construction. The original claim construction is to cause or initiate transmission, essentially cause a downstream address generation unit to generate, a cause position. And they cited Interactive Gift Express, which in turn cites Finnegan versus ITC, and I think that case is informative, but it's informative for the proposition of waiver, that the basic requirement embodied in the doctrine of waiver, the court says is that the parties develop their positions at trial, or in this case below before the board. And the court went on to say the argument should not be a moving target, and that one primary concern is whether the claim construction and arguments on appeal are consistent with what were taken below. In this case, they're just not consistent. They're 180 degrees inconsistent. And so we therefore submit that the argument was waived, and you can't bring that here for the first time. And then turning to the board's claim construction, the board's claim construction is well-reasoned, that generate means produce, not cause, or cause to produce. And SMART doesn't take a position on appeal with respect to cause. They've abandoned that, and so has the other petitioners. Nobody maintains that generate means cause. And the court gave a very well-reasoned opinion and went through the differences in use of terminology to show that generate does not mean provide, it does not mean select, it does not mean transmit. What about the dissent in this opinion? Yes. So the dissent... He understood. I mean, how does the argument he was making coincide with the argument they're making? Yes. He seemed to understand that argument, notwithstanding your arguments with regard to waiver. I think the dissent created the argument, and I'll show you why. And let's talk about my third point, and that goes to the fact that the board's findings are supported by substantial evidence. Now, on appeal, SMART points to the dissent and says that data is not a signal. There's a big distinction between data and signal, and they get that from the dissent. You'll see they don't cite any expert opinion, they don't have any expert opinion, because it was never argued and developed below. But let me take you to Appendix 147. And 147 is what they did argue to the board, and there they said that this controller 4 of Averbooz 442 represents circuitry of a control module that provides the set address and command underscore REQ signals as opcode. So they pointed to the opcode. They didn't argue that there was a distinction between signals and opcode. For the recited address and control signals, they pointed to the opcode, and from the opcode we all know, according to Averbooz, that's data. And so this distinction was created on appeal by hindsight looking back to the dissent. It's not what they argued to the board. And the asserted distinction, as I said, was never developed with expert testimony. But if you take it and you look at it fresh here on appeal, you can do a word search for the word command in Averbooz, and you'll see that Averbooz talks about communicating commands. He doesn't talk about communicating signals. He doesn't raise a distinction between data and signal or command and signal. He talks about communicating commands. And if I could take you to Appendix 5781, this is further evidence that this is an argument that was created for the first time on appeal, looking at the dissent. This is a smart petition for review in the 501 decision. And in the language that you recite here in the bottom paragraph, it says, as shown in Figure 6, memory modules 10A to 10C receives control and address data from the sequencer and uses this information to generate address and test data. So they pointed to the data all along to the board. They didn't raise a distinction between data and signal. So that's an afterthought argument based on the dissent. And it's also an incorrect argument raised by the dissent because it's inconsistent with the board's claim construction. The board said that merely retrieving a signal generated externally and then providing it without modification or transformation does not satisfy generate. And so the dissent took the view that the claim construction was right, but that you could have this mere retrieving without transformation somehow satisfy the claim construction, so that the whole position raised by the dissent, it doesn't hold water. It's inconsistent with the board's claim construction. Now, I want to make a point on this theory further with respect to retrieval of the op code. The op code admittedly exists in the BIS controller of Averbooz. It was generated externally, so it already existed. And what is stored in Averbooz's BIS controller is simply retrieved and passed to the sequencer. You have a Tier 1 BIS controller. You retrieve it, and you pass it. And that's not generating, and it doesn't remotely satisfy the claim construction. And there's no dispute on that point that the BIS controller algorithms, the commands, the op code was created externally and is simply retrieved and passed. So in our view, SMART has therefore failed to show that any of the challenge claims are anticipated. I think I've jumped ahead here, but to go back, and I think, Judge Wallach, you were right to point out this rewrite of the specification by SMART in their opening brief. We called them out, and it was 25 times. They rewrote, defaulted to predefined values. I didn't point it out. I just pointed out that you said it. Very good. Thank you. But we pointed it out, and they rewrote the specification language, defaulted from predefined values, and we said, look, you rewrote the specification. It doesn't say that. They had an effort. They wanted to say predefined values means pre-existing values stored in memory. That was their position they wanted to create, and the specification doesn't support it. And the fact that they had to rewrite to or from makes plain that the specification doesn't support it, and I think it should be well understood that to does not mean from. To means the opposite of from. The specification does not say that you have pre-existing or predefined values that are sitting there. The specification says that you can use any manner of generating the data values in any manner consistent, and it goes on to say that you can generate by programming. And if you generate by programming, this means that the values do not already exist as stored data because you generated them, and that's the concept of the invention. You are generating, producing these signals and data, and they're not really pulled off of a memory and passed and retrieved and passed forward. So the position rests on an incomplete or an incorrect reading of the specification and, in fact, a rewriting of the specification. In other words, to versus from. And, frankly, I don't think there's any reply from SMART on this point. They buried it in a footnote for in their reply, and the only response that they said is, well, it doesn't matter. Be it to or from, the key phrase is predefined, if I have that right, from their footnote for, and it does matter. They're arguing, well, you know, you're calling out the way we wrote the spec, but it doesn't matter if we change the word to, to the word from, and we submit that it very much does matter. Those words are the opposite of each other, and they're trying to create a story that predefined values means preexisting values stored in memory, but it's not supported by the specification. You can't rewrite the specification to from. So with that, Your Honor, we submit that the board's decision is well-reasoned, it's supported, and we therefore respectfully submit that the decision should be affirmed. Do you have no further questions? Thank you. On page 142 of the appendix, SMART stated it's construction, and it has never abandoned that construction. Sorry? On page 142 of the appendix, SMART stated it's construction, and it's never abandoned that construction. It cited the language defaulted to predefined values with the citations to the specification. In an argument from counsel, we heard about data received, but the claims require signals to be generated. Signals are generated and signals are transmitted. That is what the claim is. It is, you know, opcodes, yes, are data, but they're transmitted on signals. The signals are being generated by the controller, and it says that those signals include or they may be defaulted to predefined values. The data in the memory is data. The signals don't exist until that data is read, put onto a signal, and transmitted out, and that is the generating step. That is what was not appreciated in the claim construction by the board. That is what needs to be within the construction. Whatever the construction is, cause, create, initiate, it's all the same. It has to include creating a signal with the data on the signal. The trouble with your argument is that it assumes a result based on your wishes rather than on anything to which you're referencing. When you say that data is signal and signal is data. Let me be clear. Data is not signal and signal is not data. A signal is a physical item that is transmitted, an electromagnetic signal. Data is information. It is not the signal. Those are two different things, and we've been very clear in our briefs. Those are two separate things. The signal is generated, and my time is up. Thank you. We thank both sides in the case you submitted.